**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cecilia Hall,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-21-00553-TUC-JGZ<br><br>**ORDER** |

Plaintiff Cecilia Hall seeks review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits. (Doc. 1.) Hall filed an Opening Brief, the Commissioner filed a Response, and Hall filed a Reply. (Docs. 21–23.) Because the ALJ erred by finding Hall's daily activities inconsistent with her claimed limitations, the Court will reverse and remand for further proceedings.

**I.     Background**

Hall is a 49-year-old divorced single mother.[1] (Docs. 20-3 at 32; 20-15 at 29.) She has three children and five stepchildren. (Docs. 20-14 at 32; 20-15 at 29.) At age 15, Hall had her first child; she dropped out of high school in ninth grade. (Docs. 20-10 at 3; 20-14 at 32.) Hall received her general education degree at age 27 and later attended first-year college courses but received no degree. (Docs. 20-3 at 74, 124; 20-7 at 10; 20-8 at 83.) Her past work experience includes customer service, janitor, and bell ringer for charity. (Doc.

---

[1] Hall was 49 years old at the time of the ALJ's decision and 42 years old at the time of the alleged onset of disability. (*See* Doc. 20-3 at 32, 34.)

20-7 at 39.)

In 2011, Hall applied for social security disability benefits. (Doc. 20-4 at 5.) This application ended after an initial denial, reconsideration, second denial, Appeals Council review and remand, and final denial in 2014. (*Id.* at 5–16.) In 2016, Hall filed a second application, which gives rise to this action, alleging a disability onset date of May 30, 2014. (*Id.* at 106.) After this application was also denied, the Appeals Council reviewed and remanded it to the ALJ for further proceedings. (*Id.* at 120, 129–30.)

On January 11, 2021, the ALJ issued a decision that Hall was not disabled as defined by the Social Security Act. (Doc. 20-3 at 33–34.) The decision proceeded according to the five-step evaluation process set forth at 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found Hall had not engaged in substantial gainful activity since the alleged onset date. (*Id.* at 18.) At step two, the ALJ found Hall had the following severe impairments: borderline intellectual functioning, anxiety disorder, bipolar and affective disorder, posttraumatic stress disorder (PTSD), hernias, chronic left foot lisfranc injury, and obesity. (*Id.*) At step three, the ALJ determined Hall did not have an impairment or combination of impairments that met or medically equaled an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. (*Id.*) At step four, the ALJ found Hall had the residual functional capacity to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can occasionally climb ladders, ropes or scaffolds. She should avoid concentrated exposure to work hazards. She can understand, remember and carry out one-step and two-step commands involving simple instructions. She can maintain concentration, persistence and pace for up to four-hour increments with customary work breaks, and she can complete a usual workday/week. She can work in an environment with low social contact, defined as requiring only occasional, superficial contact with the public and coworkers. She can adapt to minor changes in a routine work setting.

(*Id.* at 21.) The ALJ found Hall unable to perform any past relevant work. (*Id.* at 32.) At step five, the ALJ concluded—considering Hall's age, education, work experience, transferrable skills, and residual functional capacity—that there were jobs existing in significant numbers in the national economy that she could perform, including linen clerk, produce weigher, marker, and table worker. (*Id.* at 32–33.) The Appeals Council denied

review, making the ALJ's decision final. (*Id.* at 2–4.)

## II. Legal Standard

The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). A decision of the ALJ will not be reversed for harmless errors. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). When an ALJ fails to fully credit testimony, the court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different decision. *Id.* at 1056.

## III. Discussion

In evaluating a claimant's symptom testimony, ALJs must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant has presented such evidence, the ALJ proceeds to consider all of the evidence presented to determine the persistence and intensity of the alleged symptoms. *Id.* § 404.1529(c). This evidence includes information about the claimant's prior work record, the claimant's statements about her symptoms, evidence submitted by medical and nonmedical sources, and observations by agency employees. *Id.* § 404.1529(c). If there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons supported by evidence in the record. *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021).

The ALJ found Hall suffered from many severe mental and physical impairments but concluded they were not as persistent or intense as Hall alleged. (Doc. 20-3 at 22–23.) This determination rested in part on the ALJ finding Hall's daily activities inconsistent with her statements and reported symptoms:

> Despite her combination of alleged impairments, the claimant has engaged in a somewhat normal level of daily activity and interaction. The claimant admitted to activities of daily living including light housecleaning, going to the grocery store, preparing meals, performing self-care activities such as dressing and bathing, caring for her mother, children and grandchildren, socializing with others, using public transportation, managing her finances, and displaying sufficient concentration and attention to follow television programs, bead and paint. . . .
>
> The undersigned finds the claimant's ability to participate in such activities is inconsistent with her allegations of functional limitations.

(*Id.* at 28.) Hall argues the Court should remand this case in part because the ALJ erred by failing to articulate clear and convincing reasons to discount Hall's statements.[2] (Doc. 21 at 2.) The Court agrees. An ALJ must neither mischaracterize a claimant's daily activities nor discredit the claimant based on daily activities consistent with the claimant's reported limitations. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Here, the ALJ did both.

First, the ALJ mischaracterized Hall's efforts to care for her mother, children, and grandchildren. (*See* Doc. 20-3 at 28.) Although Hall testified that she helps her mother enter and exit the shower, she stated her entire household shares in daily tasks such as cleaning and cooking. (*Id.* at 76.) Hall's household also included, at times, her teenage and adult children, who would not require the same care as younger children and who also helped care for their grandmother and for Hall. (*See id.*; Doc. 20-7 at 19, 113–14.) Regarding her grandchildren, Hall did state they were "always welcomed" and she tries "to be of any help." (Doc. 20-7 at 17.) However, protective services only temporarily placed the grandchildren in Hall's home. (*Id.* at 113; Doc. 20-3 at 108.) And despite a group effort, Hall's family was unable to handle the grandchildren and protective services took them back. (Docs. 20-7 at 113; 20-3 at 108.)

Next, the ALJ discredited Hall based on daily activities that were consistent with Hall's testimony, written statements, and alleged symptoms. Hall does not disprove the

---

[2] Hall also argues the ALJ erred by giving inappropriate weight to the opinion of Vocational Evaluator Charles Rastatter, Ed.D. (Doc. 21 at 2.) Because the ALJ's improper discrediting of Hall's statements is reversible error, the Court need not address this second argument.

reported severity of her mental and physical impairments by caring for her family, especially her young grandchildren, who protective services placed in her care. *See Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005) ("[Claimant] must take care of her children, or else abandon them to foster care or perhaps her sister, and the choice may impel her to heroic efforts. A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Under these circumstances and regardless of the severity of her impairments, Hall may still attempt to care for her family, and her efforts to do so should not be used to discredit her.

The fact that Hall shops for groceries and uses public transportation also does not undermine her credibility. *See, e.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Hall's monthly solo trip to a grocery store, where she requires a motorized scooter to shop, is consistent with her reported inability to work. (*See* Doc. 20-7 at 19.) So too is her walking and resting at five-minute intervals to get to the bus stop. (*See* Doc. 20-3 at 71–72.) The ALJ erred by concluding these activities reflected an ability to maintain full-time employment and were inconsistent with Hall's alleged symptoms.

Finally, the ALJ erred by concluding Hall's social and leisure activities were inconsistent with her claimed limitations. The social activities the ALJ referred to were Alcoholics Anonymous groups that Hall managed to regularly attend despite struggling to get out of bed and not stay in her room all day. (See Docs. 20-3 at 77; 20-10 at 53; 20-11 at 12; 20-15 at 20.) And Hall's leisure activities—watching television, beading, and painting—are neither analogous to maintaining regular employment nor examples of Hall demonstrating concentration inconsistent with her reported symptoms. *See, e.g.*, *Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011) ("As for watching television, that is hardly inconsistent with [the claimant's] allegations of pain and related concentration problems.").

Even taken together, activities such as watching television, visiting friends, and going to church or AA groups fail to indicate that a claimant can work full time in our competitive economy. *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). By finding these activities inconsistent with Hall's alleged inability to work, the ALJ improperly penalized Hall for attempting to lead a normal life in the face of her limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

In arguing the ALJ properly considered Hall's daily activities, the Commissioner cites *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) and *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). (Doc. 22 at 14.) In *Burch*, the Ninth Circuit affirmed an ALJ's decision to discredit part of the claimant's symptom testimony. 400 F.3d at 681. The ALJ's credibility analysis weighed not only the claimant's daily activities but also medical imaging that conflicted with the claimant's testimony and the claimant's failure to seek treatment. *Id.* Similarly, in *Molina*, the Ninth Circuit affirmed an ALJ's decision to discredit the claimant because of conflicting medical evidence, the claimant's failure to seek treatment, and daily activities that directly conflicted with the claimant's reported inability to tolerate even minimal human interaction. 674 F.3d at 1112–14. The Commissioner points to no such clear and convincing evidence here that would support the ALJ's decision to discredit Hall.

Only if the level of Hall's activities was inconsistent with Hall's claimed limitations would these activities have any bearing on her credibility. *See* Reddick, 157 F.3d at 722. The level of these activities, as discussed above, was not inconsistent with Hall's claimed limitations. It was therefore error for the ALJ to conclude that the activities undermined Hall's statements and the reported severity of her impairments. Absent this error, the Court cannot confidently conclude that no reasonable ALJ would have reached a different disability determination. *See Stout*, 454 F.3d at 1056. Indeed, the consideration of Hall's credibility and daily activities informed the ALJ's findings with respect to Hall's residual functional capacity and ability to adjust to other work.[3] (Doc. 20-3 at 21–22, 28.) The ALJ's

---

[3] *See, e.g.*, *Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016) ("We cannot deem the error harmless, as it informed several aspects of the ALJ's findings with respect to

error is therefore not harmless, and Hall's case must be remanded for further proceedings.

IV.     **Conclusion**

Accordingly,

**IT IS ORDERED:**

1.     The Commissioner's Final Decision is **reversed**.

2.     This case is **remanded** to the Social Security Commissioner. On remand, the Appeals Council shall remand this matter to the ALJ. The ALJ shall take any action necessary for resolution of this matter, including conducting any necessary hearings and taking any new evidence. After any necessary proceedings, the ALJ shall issue a new decision consistent with this Order.

3.     The Clerk of Court shall enter judgment accordingly and **close** its file in this action.

Dated this 23rd day of March, 2023.

_____
Honorable Jennifer G. Zipps
United States District Judge

---

[claimant's] residual functional capacity and consequently her ability to perform past relevant work or to adjust to other work. [Claimant's] case must therefore be remanded to the agency for further proceedings.").